IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES CLEVELAND, et al.                    *

    *Plaintiffs*                              *

v.                                          *       CASE NO: 11-CV-00026 WDQ

PENINSULA REGIONAL MEDICAL              *
CENTER
                                            *
    *Defendant*
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE ANY REFERENCE, TESTIMONY OR ARGUMENT THAT MICHAEL SOFRONSKI, M.D. DEVIATED FROM THE STANDARD OF CARE

The Plaintiffs, by and through their undersigned counsel, hereby file this Motion *in Limine* to Preclude Any Reference, Testimony or Argument that Michael Sofronski, M.D. deviated from the standard of care in his treatment of the Decedent, and for grounds state:

### INTRODUCTION

This is a medical negligence action being brought for the death of Retha Cleveland, a woman who died in March 2007 at the age of 51. Peninsula Regional Medical Center is the only named Defendant in the case, and is being sued vicariously for the negligence of its employees. Based on the discovery conducted to date, it is apparent that PRMC may attempt to present evidence at trial (and argue to the jury) that a non-party to the case, Michael Sofronski, M.D., deviated from the standard of care in his treatment of Mrs. Cleveland and that Dr. Sofronski's negligence caused Mrs. Cleveland's death. PRMC's trial strategy is a blatant attempt to deflect attention away from its own negligence, and to confuse the jury by blaming a non-party. For the reasons set forth below, it is completely inappropriate to permit PRMC to present evidence and expert testimony that a non-party was negligent. The question of whether or not Dr. Sofronski

was negligent is absolutely irrelevant in determining whether PRMC was negligent and caused Mrs. Cleveland's death, and evidence of his negligence will only serve to confuse and mislead the jury. Therefore, the Plaintiffs move to preclude any testimony, argument, or other evidence that Dr. Sofronski was negligent.

## FACTUAL BACKGROUND

On March 14, 2007, Mrs. Cleveland underwent elective gallbladder surgery at Peninsula Regional Medical Center. The surgery was performed by Michael Sofronski, M.D., who is not a defendant in the case.[1] The surgery to be performed was supposed to be a simple procedure and Mrs. Cleveland was scheduled to be discharged within 24 hours after the operation. During the entire time Mrs. Cleveland was under anesthesia (a little over 90 minutes), she was immobile and her legs were strapped to the operating table. Throughout the procedure, she was wearing foot pumps at Dr. Sofronsky's direction in order to prevent blood from clotting in her legs and forming a deep vein thrombosis ("DVT").[2]

After surgery, Mrs. Cleveland was taken to the recovery room or "PACU." She remained there with her foot pumps on until approximately 12:30 p.m. when she was taken to a regular floor.[3] The post operative orders by Dr. Sofronski were for "sequential stockings; may

---

[1] Dr. Sofronski was originally named as a defendant, but the Plaintiffs voluntarily dismissed him. There was no settlement with Dr. Sofronski.

[2] A DVT is a clot that forms in the back of one's legs in the deep veins when certain conditions are present (immobility, slowing of blood flow, dehydration, etc). If blood is not flowing properly, it is more susceptible to clotting. The danger of a DVT is that if a clot forms, it can break off at any time and travel to a person's lungs and cause imminent death (as it blocks the pulmonary veins and arteries and stops all circulation). This is called death from a pulmonary embolism ("PE"). There are known risk factors for the development of DVT which include obesity, surgery greater than one hour, immobility, etc.

[3] Foot pumps are pumps on the feet which keep the venous flow going to prevent clots in the deep veins or DVT. The pumps are continuous in nature and are hooked up to electricity in the wall. They cover part of the bottom of one's feet.

discontinue when ambulating."[4] The literature and common sense dictate that this order means the stockings (or pumps) must stay on until the patient is discharged. When he/she is ambulating (or walking) in the hospital, they may be discontinued at that time. Mrs. Cleveland came to her room on the floor at 12:30 p.m. with foot pumps on (in lieu of stockings). They were removed by the nurses shortly after her arrival to the floor because she wished to use the restroom. They were never re-applied by the nurses for the remainder of her 22 hour stay.

The nurses were taking Mrs. Cleveland's vital signs every four hours prior to her discharge at 10:30 a.m. the following day, March 15, 2007. Her last vital signs at 6:00 a.m. on March 15th were abnormal with a pulse of 103 (tachycardic). The nurses did not report this abnormal pulse to Dr. Sofronski. No vital signs were taken at 10:00 a.m. prior to discharge. On the morning of March 15th, Mrs. Cleveland was also red in the face, sweating and nauseated. These concerning findings were also not communicated to Dr. Sofronski.[5] Mrs. Cleveland was taken home that morning by her mother.

Once home, Mrs. Cleveland was in bed for most of the time. When she came out of the bedroom around 3:00 p.m., she came into the family room and collapsed on the couch face-down. Fire and rescue was called immediately but she could not be revived. She was pronounced dead at Atlantic General Hospital around 4:30 p.m. Death was considered to be from a pulmonary embolism.

Plaintiffs will prove at trial that the standard of care required the nurses to comply with Dr. Sofronski's orders and to keep the foot pumps on until the time of Mrs. Cleveland's

---

[4] Sequential stockings are continuous pumps that are placed on the calves of a person. The purpose again is to prevent DVT. If a patient is too obese, foot pumps are often substituted for sequential compression devices as the SCDs may not properly fit the individual's calves and thus would be ineffective.

[5] Findings of a pulmonary embolism can include fever, nausea, sweating and an elevated pulse. Our experts will testify that Mrs. Cleveland's findings needed to be reported by the nurses to Dr. Sofronski and had they been reported, a reasonable doctor would have kept her in the hospital and performed testing for a DVT (and then treatment for same) prior to her death later that day.

discharge. Plaintiffs will also prove that the standard of care required the nurses to timely and properly report Mrs. Cleveland's signs and symptoms immediately prior to discharge to Dr. Sofronski so an adequate physician work-up could be performed which would include diagnosis and treatment for the DVT prior to her death.

## ARGUMENT

### I.  PRMC Never Filed Third Party Action Against Dr. Sofronski

If PRMC had wanted to prove that Dr. Sofronski was negligent in the instant trial, it had a mechanism available to it. Federal Rule 14 provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." It is obvious that Rule 14 would be applicable in the case at bar had PRMC chosen to avail itself of that rule. PRMC has been sued in a case where the Plaintiffs claim that PRMC was negligent and caused Mrs. Cleveland's death. If PRMC alleges that it was actually Dr. Sofronski who caused the death, then this is the precise situation that Rule 14 was designed to address. And yet PRMC chose not to pursue a third party action against Dr. Sofronski. By failing to file a third party action, PRMC has waived any right to argue that Dr. Sofronski was negligent in the case at bar.[6]

Although the right of contribution certainly exists in Maryland, it is not available in the instant trial because the target of contribution, Dr. Sofronski, is a non-party. Section 3-1402 of the Maryland Courts and Judicial Proceedings Article provides that "[t]he right of contribution exists among joint tort-feasors." § 3-1402(a). Joint tort-feasors are, in turn, defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." § 3-1401(c). The essence of

---

[6] The Plaintiffs are not suggesting that the Defendant was required to file a third party action. Rule 14 is permissive. However, what the Defendant cannot do is forego filing a third party action, and then try to litigate the case against the very person it opted not to sue.

4

the Act is that a tort-feasor has a right of contribution and is entitled to a money judgment for contribution when it has by payment discharged the common liability or has paid more than a pro rata share of the common liability. Pursuant to the express language of the statute, a contribution action is an action filed by one joint tort-feasor against another party alleged to be a joint tort-feasor, which can be done either as a third party action in the underlying lawsuit, or as a subsequent lawsuit. In either event, it is a requirement that there be an actual lawsuit against the party alleged to be a joint tort-feasor so that there can be a determination of that party's liability.[7]

There is no Maryland case or statute that allows a trial court (or jury) to determine the joint tort-feasor status of a <u>non-party</u>. To the contrary, the Court of Appeals has held that a non-party cannot be a joint tort-feasor. *Hashmi v. Bennett*, 7 A.3d 1059 (Md. 2010). In *Hashmi*, a defendant doctor in a medical negligence action was found to be liable, after which he sought a *pro rata* reduction in the verdict based on the presence of settling defendants. In counting the number of settling defendants to determine the *pro rata* share, the defendant sought to include not only a settling hospital, but several individual employees of that hospital. The appellate court rejected that method of counting settling parties and specifically pointed out that "[n]one of the three [hospital] employees was named as a defendant in the original action, <u>nor did [the defendant] join them as third-party defendants pursuant to Rule 2-332(a)</u>." *Id.* at 1070 (emphasis added). The court went on to say, "Never has this Court, or as far as we can tell, any other court, permitted this type of 'judicial determination' of joint tort-feasor status, without their having been joined as original defendants or as third parties. Rather, in *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992), we determined that only a party to an action may be deemed

---

[7] The only exception would be if a party settled a case with a plaintiff and executed a release wherein it admitted its own joint tort-feasor status. That is obviously not the case here as the Plaintiffs did not enter into any settlement with Dr. Sofronski.

5

a 'joint tort-feasor.'" *Id.* at 1071. In the case at bar, Dr. Sofronski is not a defendant in the case and PRMC never joined him as a third party defendant. Because he is not a party to this litigation, there can be no determination of his joint tort-feasor status in the instant trial. Therefore, there is no purpose whatsoever in presenting evidence of Dr. Sofronski's negligence other than to obfuscate the real issue in this case, i.e., was PRMC negligent and did it cause Mrs. Cleveland's death.[8]

Also, although it is an obvious point, it must also be emphasized that Maryland is not a comparative negligence jurisdiction. In those states where comparative negligence is the law, the negligence of non-parties can be relevant. Indeed, some comparative negligence states have even permitted an immune non-party to be on a verdict sheet because the negligence of non-parties may be relevant in determining the percentage of fault of the defendant. *See, e.g., Carroll v. Whitney, M.D.*, 29 S.W.3d 14 (Tenn. 2000) (holding that "when a defendant raises the nonparty defense in a negligence action, a jury may generally apportion fault to immune nonparties."). The reason is that if a defendant is only responsible for that percentage of negligence that it committed, then the jury is entitled to determine the negligence of all persons who may have caused injury. In Maryland, however, which is not a comparative negligence state, and which still utilizes joint and several liability, it is beyond dispute that a non-party is not going to be listed on the verdict sheet because the negligence of non-parties is irrelevant to the named defendant's liability. This case is about the liability of PRMC, the only named Defendant in the case. PRMC is not allowed to litigate a case against a non-party and to have the jury determine the non-party's liability.

---

[8] The Plaintiffs recognize that the Defendant, in the event it is found liable at trial, could still pursue a contribution action against Dr. Sofronski. In such a case, it would of course be entirely appropriate to present evidence of Dr. Sofronski's negligence as his status as a joint tortfeasor would be directly at issue. Without such a case, however, there is simply no reason why Dr. Sofronski's negligence would be an issue at the instant trial.

## II.     Evidence of Dr. Sofronski's Negligence is Irrelevant and Inadmissible

Any evidence or argument presented as to Dr. Sofronski's negligence (including the testimony of PRMC's experts) is inadmissible as a matter of law because it is irrelevant to the issues at hand. Rule 402 of the Federal Rules of Evidence provides that "[I]rrelevant evidence is not admissible." Rule 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."

In the case at bar, Dr. Sofronski's negligence, or lack thereof, does not make it any more or less probable that PRMC was negligent, nor does it make it any more or less probable that Mrs. Cleveland's death was caused by PRMC. Dr. Sofronski and PRMC are completely independent actors. His negligence is a complete non-factor in determining the material issue in this case, i.e., was PRMC negligent and did it cause Mrs. Cleveland's death. Any evidence of his negligence is inadmissible because it is irrelevant.

Even assuming, *arguendo*, that the Court were to find that evidence of Dr. Sofronski's negligence is relevant, it should still be excluded under a Rule 403 analysis: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Allowing PRMC to present evidence of Dr. Sofronski's alleged negligence will only serve to confuse and mislead the jury. They will be given the clear impression that Dr. Sofronski's negligence is an issue for them to decide, even though Dr. Sofronski will not be present in court as a party and even though he will not appear on the verdict sheet. The jury will be left wondering what it is supposed to do with such evidence because there is no determination for them to make concerning his negligence.

Such evidence will also make the jury think that they have to decide an either/or question, i.e., was PRMC negligent or was Dr. Sofronski negligent. That is a false choice that has no legal relevance because medical negligence does not operate as an either/or question. Even assuming, *arguendo*, that Dr. Sofronski was negligent, it does not relieve PRMC of its own negligence. Such a subtle legal tenet will likely be lost on a jury of laypersons, especially after hearing testimony from expert medical witnesses that Dr. Sofronski was negligent.[9]

Evidence of Dr. Sofronski's negligence will further confuse the jury – and prejudice the Plaintiffs – because it will likely make them wonder why the Plaintiffs did not sue him directly, or cause the jury to speculate that the Plaintiffs settled with Dr. Sofronski and that that is the reason why he is not present at the trial of this case as a party. That could impact the jury's deliberations not only on damages but on liability as well if they speculate that Dr. Sofronski was the culpable party. Furthermore, Dr. Sofronski – because he is not a party to the case – will not be presenting any defense at trial to PRMC's allegations of evidence. PRMC's evidence and expert testimony will be uncontroverted, making it much more likely that the jury will give credence to the evidence because they will only be hearing one side of the story. This will force Plaintiffs' counsel into the untenable position of serving as *de facto* counsel for Dr. Sofronski, trying to defend against PRMC's allegations of his negligence. All of this would be a complete distraction to the real issues in this case – was PRMC negligent and, if so, did it cause Mrs. Cleveland's death. That issue is completely independent of whether Dr. Sofronski was negligent.

---

[9] If the jury were to hear evidence of Dr. Sofronski's negligence and then make a finding that PRMC was <u>not</u> negligent, the Court and the parties would legitimately wonder whether the jury's finding was based on the Plaintiffs not meeting their burden in proving PRMC negligent, or whether it was based on the jury's finding that Dr. Sofronski was negligent. It would be impossible to know.

8

## **CONCLUSION**

PRMC clearly had a mechanism available to it in order to present the issue of Dr. Sofronski's liability to the jury in this case. PRMC chose not to avail itself of that mechanism, and did so in appreciation of the risk associated with that choice. Dr. Sofronski's negligence is simply not at issue in this case because PRMC failed to file a third party claim against him. As such, any evidence of his negligence is irrelevant and would only serve to confuse or mislead the jury. For these reasons, the Plaintiffs hereby request that this Honorable Court preclude any evidence, testimony or argument that Dr. Sofronski was negligent in his care and treatment of Mrs. Cleveland.

Respectfully Submitted,

/s/
Julia Arfaa
Wais, Vogelstein & Arfaa, LLC
1829 Reisterstown Road
Suite 425
Baltimore, Maryland 21208
(410) 998-3600
JRA@malpracticeteam.com
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion in Limine was served via the Court's electronic case filing system this ___ day of December 2012, upon the following:

John R. Penhallegon, Esquire
Valerie Grove, Esquire
Cornblatt, Bennett, Penhallegon & Robertson, P.A.
100 West Pennsylvania Avenue, Suite 100
Towson, Maryland 21204
*Attorneys for Defendant*
*Peninsula Regional Medical Center*

_____/s/_____
Julia Arfaa

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES CLEVELAND, et al. | * | |
| *Plaintiffs* | * | |
| v. | * | CASE NO: 11-CV-00026 WDQ |
| PENINSULA REGIONAL MEDICAL CENTER | * | |
| | * | |
| *Defendant* | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **ORDER**

Upon consideration of Plaintiffs' Motion *in Limine* to Preclude Any Reference, Testimony or Argument that Michael Sofronski, M.D. Deviated From the Standard of Care, and any opposition thereto, it is this _____ day of _____, 2012, hereby

ORDERED that Plaintiffs' Motion is hereby GRANTED; and it is further

ORDERED that there shall be no reference, testimony or argument that Dr. Sofronski deviated from the standard of care in his treatment of the Decedent.

SO ORDERED.

_____
Judge

Copies to:

Julia Arfaa, Esquire
John R. Penhallegon, Esquire

11