IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JAMES CLEVELAND, et al.,

    Plaintiffs,

v.                      CIVIL NO.: WDQ-11-0026

PENINSULA REGIONAL MEDICAL
CENTER,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

James Cleveland and others[1] (the "Plaintiffs") sued Peninsula Regional Medical Center ("Peninsula")[2] for medical malpractice. Pending is Peninsula's motion *in limine* to exclude certain testimony of the Plaintiffs' experts. Also pending are the Plaintiffs' motions *in limine* to exclude: (1) evidence of Michael Sofronski, M.D.'s deviation from the standard of care; (2) evidence of relationships between Retha Cleveland's family members; and (3) evidence of James Cleveland's criminal history. For the following reasons, Peninsula's motion will be denied. The Plaintiffs' motion to exclude evidence of Dr. Sofronski's

---

[1] Hilda Mitchell, the mother of Retha Cleveland, and Matthew Kauffman, the son of Retha Cleveland, are also named plaintiffs. ECF No. 1.

[2] Delmarva Bariatric Center, P.A. and Michael D. Sofronski, M.D. were originally named as defendants. ECF No. 1. Under the April 12, 2012 Order, both parties were voluntarily dismissed. ECF No. 64.

1

deviation from the standard of care will be denied as moot. The Plaintiffs' motion to exclude evidence of the relationships between Retha Cleveland's family members will be denied. The Plaintiffs' motion to exclude evidence of James Cleveland's criminal history will be granted.

I. Factual and Procedural History

On March 14, 2007, Retha Cleveland, James Cleveland's wife, underwent an outpatient laparoscopic gallbladder surgery at Peninsula Regional Medical Center. ECF No. 91-1 at 2. Dr. Sofronski, a general surgeon, performed the operation. *Id*. At Dr. Sofronski's direction, Retha Cleveland wore foot pumps before her procedure to prevent blood from clotting in her legs. ECF No. 93 at 2. After surgery, she was taken to a recovery room until she was transferred to a regular floor at about 12:30 p.m. *Id*. Dr. Sofronski's post-operative orders provided for "sequential stockings; may discontinue when ambulating." *Id*. at 2-3. Her foot pumps were removed when she was transferred to a regular floor. *Id*. at 3. On the morning of March 15, 2007, she was discharged. *Id*. at 4. That afternoon, she collapsed and was transported to Atlantic General Hospital, where she was pronounced dead. *Id*.

Hilda Mitchell, Retha Cleveland's mother, is the Personal Representative of the Retha Cleveland's estate. ECF No. 94 at 2. James Cleveland is the decedent's husband. *Id*. Mitchell

and James Cleveland "are not close." *Id*. James Cleveland sued Mitchell about her administration of the estate; the suit has been settled. *Id*. at 3. Matthew Kaufman is the son of the decedent. *Id*. at 4.

On January 5, 2011, the Plaintiffs sued Peninsula for wrongful death of Retha Cleveland. ECF No. 1. On December 27, 2011, the Plaintiffs filed the report of Harold Palevsky, M.D., a pulmonologist. ECF No. 91-1, Ex. 1. On December 28, 2011, the Plaintiffs filed the report of Bernard Bendedetto, M.D., a general surgeon. *Id*. The February 3, 2012 Order modifying the scheduling order set that day as the deadline for the Plaintiffs to provide expert reports. ECF No. 59. On March 30, 2012, the deadline for Peninsula to provide expert reports, Peninsula provided reports of Paul Lin, M.D., a general surgeon, and Philip Buescher, M.D., a pulmonologist. ECF No. 91-1, Ex. 2.

In his April 17, 2012 deposition, James Cleveland testified that he had pled guilty in 2002 or 2003 to a misdemeanor involving theft from an employer. ECF No. 95 at 7. On May 14, 2012, the Plaintiffs provided supplemental reports of Dr. Palesky and Dr. Benedetto. ECF No. 78. On June 11, 2012, the discovery deadline was extended to October 31, 2012. ECF No. 82.

On July 27, 2012, Peninsula deposed Dr. Palevsky. ECF No. 91-1, Ex. 3. By a September 14, 2012 letter, the Plaintiffs

informed Peninsula that Dr. Benedetto would be offering additional opinions about the nurses' standard of care. ECF No. 103 at 5. On October 11, 2012, the Plaintiffs deposed Dr. Lin. ECF No. 100, Ex. D. On October 16, 2012, the Plaintiffs deposed Dr. Buescher. ECF No. 100, Ex. C. By an October 16, 2012 letter, the Plaintiffs informed Peninsula that they would call a rebuttal cardiologist based on the depositions of Dr. Lin and Dr. Buescher. ECF No. 91-1, Ex. 5. On October 30, 2012, the Plaintiffs provided the expert report of cardiologist Neal Shadoff, M.D. ECF No. 91-1 at 6.

On December 7, 2012, Peninsula moved *in limine* to exclude certain testimony of the Plaintiffs' experts. ECF No. 91. On December 7, 2012, the Plaintiffs moved *in limine* to exclude evidence: (1) that Dr. Sofronski had deviated from the standard of care; (2) concerning relationships between decedent's family members; and (3) concerning James Cleveland's criminal history. ECF Nos. 93, 94, 95. On December 20, 2012, Peninsula responded to each motion. ECF Nos. 97, 98, 99. On December 21, 2012, the Plaintiffs responded to Peninsula's motion *in limine*. ECF No. 100.

II. Analysis

    A.    Peninsula's Motion *In Limine* to Exclude Certain Testimony of the Plaintiffs' Experts

Peninsula asserts that certain testimony of Dr. Palevsky and Dr. Benedetto should be excluded because the opinions were not properly disclosed under Rule 26(a)(2). ECF No. 91 ¶¶ 3, 4. Peninsula also argues that all testimony of Dr. Shadoff should be excluded because the Plaintiffs did not timely designate him as a rebuttal expert. *Id.* ¶ 5. The Plaintiffs contend that any failure to disclose the opinions of Dr. Palevsky and Dr. Benedetto is harmless, and Peninsula will not be prejudiced by allowing Dr. Sadoff to testify. ECF No. 100 at 6, 8, 12.

Under Fed. R. Civ. P. 26, a party must disclose the experts who may testify at trial. The disclosure must be accompanied by a signed report containing "(i) a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a). A party must supplement the expert disclosure if it is "incomplete or incorrect" when the party's pretrial disclosures are due. Fed. R. Civ. P. 26(e).

Under Fed. R. Civ. P. 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or harmless." In determining whether a nondisclosure

5

of evidence is substantially justified or harmless under Rule 37(c), the Court considers:

> (1) the surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). A finding of bad faith is not required under Rule 37(c). *Id.* at 596. "[W]hether a late disclosure is prejudicial depends on whether the expert testimony was unexpected and left the other party without adequate opportunity to prepare for it." *Michelone v. Desmarais*, 25 F. App'x 155, 158 (4th Cir. 2002).

Peninsula asserts that when deposed on July 27, 2010, Dr. Palevsky offered new opinions criticizing the nurse's decision to discharge Retha Cleveland, the failure to obtain vital signs prior to discharge, and the discharge instructions. ECF No. 91 ¶ 3. Peninsula contends that these opinions were not contained in the original expert report or the supplemental report, and thus should be excluded. ECF No. 91-1 at 9.

After weighing the factors, the Court concludes that the failure to fully disclose Dr. Palevksy's expert opinions is not prejudicial. Although Peninsula may have been surprised by Dr. Palevsky's opinions about other standard of care issues in his

6

deposition, Peninsula has had ample opportunity to cure that surprise.[3] Dr. Palevksy was deposed in July 2012, well before the October 31, 2012 discovery deadline,[4] and the September 3, 2013 trial date.[5] Peninsula has not sought a court order to further depose Dr. Palevsky about those new opinions. ECF No. 100 at 5. Dr. Palevsky's opinion provides important information about Peninsula's negligence and the decedent's cause of death.[6]

Similarly, Peninsula argues that Dr. Benedetto's opinions on the additional standard of care issues discussed by Dr. Palevsky in his deposition should be excluded. ECF No. 91-1 at 21. However, the Plaintiffs provided notice to defense counsel before Dr. Benedetto's deposition that he would offer opinions about the nurses' care before the decedent's discharge. ECF No. 100 at 6, 7. The Plaintiffs declined to depose Dr. Benedetto. *Id.* at 7. The Plaintiffs did not act in bad faith or attempt to offer new expert testimony on the eve of trial; no drastic

---

[3] *See Golden Nugget, Inc. v. Chesapeake Bay Fishing Co., L.C.*, 93 F. App'x 530, 535 (4th Cir. 2004) (evidence not excluded because the opponent "failed to avail itself of any of the opportunities that existed to cure the effect of the surprise").

[4] ECF No. 81.

[5] ECF No. 96.

[6] *See Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 507 (D. Md. 1997) ("[T]he court should evaluate whether the expert . . . is central to the sponsoring party's case, or merely one of several experts who will testify to the same point.").

7

remedy is required.[7] Peninsula's motion to exclude certain testimony of Dr. Palevsky and Dr. Benedetto will be denied.

Peninsula also argues that Dr. Shadoff should be precluded from testifying. ECF No. 91-1 at 22. The Plaintiffs counter that they designated Dr. Shadoff to rebut new cardiology opinions offered by Peninsula's experts during their depositions. ECF No. 100 at 11. Dr. Buescher and Dr. Lin, Peninsula's experts, provided opinions beyond their original reports.[8] The Plaintiffs' named Dr. Shadoff as a witness to rebut this testimony the week following the deposition of Peninsula's experts. ECF No. 91-1 at 23.

The admission of Dr. Shadoff's expert testimony will not be prejudicial to Peninsula. To the extent that Peninsula was surprised by the Plaintiffs' rebuttal expert, Peninsula had the opportunity to seek a court order to depose Dr. Shadoff.[9] His testimony is essential to the Plaintiffs' efforts to rebut the newly provided causation testimony of Peninsula's experts. See

---

[7] See Tritchler v. Consolidation Coal Co., 91 F.3d 134, 134 (4th Cir. 1996) (explaining that exclusion "is a drastic remedy that is [generally] not imposed unless the party's conduct is in bad faith or callous disregard of the discovery rules").

[8] For example, Buescher and Lin related a previous cardiac episode to the decedent's death; that episode had not been referred to in their prior reports. See ECF No. 100 at 9-11.

[9] See Michelone v. Desmarais, 25 F. App'x 155, 159 (4th Cir. 2002) (the plaintiff was not prejudiced by late expert report because plaintiff declined opportunity to depose that expert).

ECF No. 100 at 12. The need to rebut cardiology opinions that appeared for the first time in Peninsula's expert depositions is a justifiable reason for the Plaintiffs' late designation of Dr. Shadoff.[10] Accordingly, Peninsula's motion to exclude the testimony of Dr. Shadoff will be denied.

B. The Plaintiffs' Motion *In Limine* Regarding Dr. Sofronski's Deviation from Standard of Care

The Plaintiffs ask the Court to exclude evidence that Dr. Sofronski deviated from the standard of care in treating Retha Cleveland or that Dr. Sofronski's negligence caused her death. ECF No. 93 at 1. First, the Plaintiffs assert that Peninsula is not permitted to argue Dr. Sofronski's negligence because Peninsula failed to file a third party action against Dr. Sofronski. *Id.* at 4. Second, the Plaintiffs argue that evidence of Dr. Sofronski's negligence is irrelevant and inadmissible. *Id.* at 7. Alternatively, the Plaintiffs' assert that Dr. Sofronski's alleged negligence will confuse and mislead the jury. *Id.*

---

[10] *Cf. Metts v. Airtran Airways, Inc.*, No. DKC 10-0466, 2010 WL 4183020, at *3 (D. Md. October 22, 2010) (excluding plaintiffs' expert testimony after finding that plaintiffs' explanations for delay were insubstantial).

Peninsula does not intend to argue that Dr. Sofronski was negligent or breached the standard of care in treating Cleveland,[11] the Plaintiffs' motion will be denied as moot.[12]

C.  The Plaintiffs' Motion *In Limine* About Relationship Between Retha Cleveland's Family Members

The Plaintiffs seek to exclude any reference to the relationship between Hilda Mitchell, the Retha Cleveland's mother, and James Cleveland, and the relationship between James Cleveland and Matthew Kauffman, Retha Cleveland's son. ECF No. 94 at 1. The Plaintiffs assert that the evidence is irrelevant and unfairly prejudicial. *Id.* at 1-4.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is inadmissible. Fed R. Evid. 402. Under Fed. R. Evid. 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

---

[11] ECF No. 98 at 4. If circumstances warrant it, the Court will consider a curative instruction to lessen the likelihood of juror confusion.

[12] If Peninsula seeks to introduce such evidence at trial, the Plaintiffs may then object.

Peninsula asserts that although these family relationships are not relevant to whether Peninsula was negligent in the decedent's death, they are relevant to the issue of damages. ECF No. 97 at 4. The Plaintiffs allege that Cleveland has been "deprived of the society, companionship, comfort, protection, care, attention, advice, counsel, and support" provided by the decedent as the result of Peninsula's negligence. ECF No. 1 ¶ 22. In measuring these noneconomic damages in a suit brought by a spouse, the quality of the couple's relationship is relevant.[13] Evidence relating to James Cleveland's suit against Mitchell over the administration of Retha Cleveland's estate may provide insight into the quality of Cleveland's relationship with the decedent.[14] Similarly, Kauffman, may provide testimony about his relationship with James Cleveland that speaks to James Cleveland's relationship with Retha Cleveland as well.[15] Because evidence about Cleveland's relationships with the decedent's

---

[13] See Driscoll v. U.S., 456 F. Supp. 143, 153 (D. Del. 1978) (applying Maryland law, relying on facts about husband's close and happy relationship with wife in determining damages).

[14] Peninsula intends to rebut James Cleveland's testimony about his close relationship with his wife by presenting evidence that James Cleveland believed his wife's will "did not sufficiently provide for him," and as a result, he brought suit against Mitchell for a larger share of the estate than originally intended by Retha Cleveland. ECF No. 97 at 5.

[15] Kauffman was scheduled for a deposition but failed to appear. ECF No. 97 at 5. Peninsula has no knowledge of what Kauffman would say about his relationship with James Cleveland or Retha Cleveland. Id.

family members is relevant to damages and not unfairly prejudicial, the Plaintiffs' motion will be denied.[16]

    D. The Plaintiffs' Motion *In Limine* Regarding James Cleveland's Criminal History

The Plaintiffs move to preclude testimony about James Cleveland's criminal history. ECF No. 95 at 1. Peninsula "does not intend to present evidence or elicit testimony concerning the criminal history of James Cleveland" and consents to the exclusion of "any mention of James Cleveland's criminal past." ECF No. 99. Accordingly, the motion will be granted.

III. Conclusion

For the reasons stated above, Peninsula's motion *in limine* will be denied. The Plaintiffs' motion to exclude evidence of Dr. Sofronski's deviation from the standard of care will be denied as moot. The Plaintiffs' motion to exclude evidence of the relationships between Retha Cleveland's family members will be denied. The Plaintiffs' motion to exclude evidence of James Cleveland's criminal history will be granted.

\_\_\_8/23/13_____ \_\_\_/s/_____
Date                                             William D. Quarles, Jr.
                                                            United States District Judge

---

[16] The Plaintiffs argue only that the testimony would "paint an unflattering portrait" or "serve to embarrass" the Plaintiffs. ECF No. 3, 4.
    See Fed. R. Evid. 403. *Cf. Driscoll*, 456 F. Supp. at 153 (D. Del. 1978) (applying Maryland law).